UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

PETERS BROADCAST ENGINEERING,
INC.,
426 W. LUDWIG ROAD
FORT WAYNE, INDIANA 46825

    PLAINTIFF,

VS.

PEM CONSULTING GROUP, LLC
504 CENTENNIAL BLVD., SUITE 1003
VOORHEES, NEW JERSEY 08043

AND

PYRAMID CONSULTANTS &
CONSTRUCTION, LLC
504 CENTENNIAL BLVD., SUITE 1003
VOORHEES, NEW JERSEY 08043

AND

PHILLIP E. MILLER
1103 CHAMPLAIN DRIVE
VOORHEES, NEW JERSEY 08043

AND

ATLANTIC CASUALTY INSURANCE
COMPANY
400 COMMERCE COURT
GOLDSBORO, NORTH CAROLINA 27534

AND

CHESAPEAKE INSURANCE
C/O G.A. BONDON INSURANCE SERVICE
19479 SASSAFRAS RIDGE TER
LEESBURG, VIRGINA 20176-6928

    DEFENDANTS.

CASE NO.  21-CV-219
COMPLAINT

JURY DEMAND
ENDORSED HEREON

Judge _____

Magistrate Judge _____

1

## COMPLAINT FOR DAMAGES
## I. INTRODUCTION

Plaintiff, Peters Broadcast Engineering, Inc. (or "PBE"), asserts the following claims under the Federal Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962, and common law theories against Defendants PEM Consulting Group, LLC, Pyramid Consultants & Construction, LLC and Phillip E. Miller, and for contract and Declaratory Judgment against Defendants Atlantic Casualty Insurance Company and Chesapeake Insurance.[1] This Complaint stems from the Defendants' conduct in connection with certain transactions described in greater detail below.

Peters Broadcast Engineering, Inc. hereby asserts these claims against the Defendants jointly and severally. This Complaint arises from operation of a sham entity for the purported construction of communication facilities, including cell towers, by Defendants PEM Consulting, Pyramid and Phillip E. Miller. Specifically, as fully outlined below, these Defendants have used and are using Defendants PEM Consulting and Pyramid, purported corporate entities whose existence should be disregarded for the reason they are shams being used to cause financial injury and to induce prime contractors, such as PBE, into construction agreements in order to extort and extract payment of funds without thereafter providing the required materials, labor or supervision required at a telecommunications construction site. Defendants have breached agreements with PBE,

---

[1] Unless otherwise specified, "Defendants" as used herein refers to all named Defendants.

2

causing PBE the loss of market share, goodwill, future contracting opportunities and debilitating financial loss, and have also caused damage and loss to the third-party with whom PBE contracted to construct the facilities.

## II.  JURISDICTION AND VENUE

1. Jurisdiction is founded upon the provisions of 28 U.S.C. § 1331 in that this action arises under federal law, 18 U.S.C. § 1962, *et seq*. Jurisdiction over the state law claims arises under this Court's pendent jurisdiction. Jurisdiction is also based on the provisions of 28 U.S.C. § 1332 inasmuch as the parties are citizens of different states and the amount in controversy exclusive of interest exceeds $75,000.00.

2. Venue is properly laid in the Northern District for the reason the events described hereinbelow touch and concern the Northern District of Indiana.

3. All parties defendant are subject to the personal jurisdiction of this court under Fed. R. Civ. P. Rule 4(e) under the nationwide service of process provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1962. The Northern District of Indiana is the most convenient venue. The conduct injuring plaintiff and continuing to injure it occurred, in significant measure, in the Northern District of Indiana. The acts complained of took place in the Northern District of Indiana. It is in the interests of justice that the individual defendants be made party to an action in this district under 18 U.S.C. § 1965(b).

## III. PARTIES

4. Plaintiff, PBE, is a telecommunications engineering company. By reason of the acts complained of below, PBE has experienced direct financial injury traceable to Defendants' conduct, which can be redressed by the relief requested herein. PBE is a corporation organized and existing under the laws of Indiana. Its principal place of business is Fort Wayne, Indiana. The agreements underlying the action were executed in the Northern District of Indiana.

5. Defendant PEM Consulting Group, LLC (hereinafter "PEM") is a New Jersey limited liability company. The members of PEM are Phillip E. Miller, a citizen of New Jersey, Michael C. Barron, a citizen of Illinois, and Thomas Ross, a citizen of Michigan. The citizenship of PEM and its members is diverse from that of PBE.

6. Defendant Pyramid Consulting & Construction, LLC ("Pyramid") is a dba for PEM. Pyramid's citizenship is the same as PEM.

7. Defendant Phillip E. Miller (hereinafter Miller"), is the Chief Executive Officer and Managing Member of PEM.

8. Defendants Atlantic Casualty Insurance Company ("Atlantic") and Chesapeake are the general liability carriers for PEM. Miller and PEM represented to PBE that Atlantic and Chesapeake are its insurance carriers for transactions with PBE and that PBE would be made a loss payee and additional insured on their general liability insurance policies. Atlantic is a for-profit domestic insurance company incorporated in North Carolina with a principal place of business in the State of North Carolina, Chesapeake is

a for-profit domestic insurance company incorporated in Maryland, with a principal place of business in the State of Maryland.

## IV. LEGAL FRAMEWORK

9. The Racketeer Influenced and Corrupt Organizations Act (commonly referred to as "RICO" or "the Act") was enacted in 1970 by the federal government to control organized crime groups. The Act is found in Title 18, United States Code, and Sections 1961-1968.

10. The RICO statute makes it unlawful to conduct or conspire to conduct an enterprise whose activities affect interstate commerce by committing or conspiring to commit a pattern of racketeering activity. Section 1964(c) of RICO allows civil claims to be brought by any person injured in their business by reason of a RICO violation.

11. Defendants PEM, Pyramid and Miller conspired to conduct an illegal enterprise through a pattern of racketeering, thereby violating or conspiring to violate the RICO statute. Hereinafter, this illegal enterprise will occasionally be referred to as "the RICO Enterprise."

12. PEM, Pyramid and Miller perpetuated a scheme to extract, extort, trick, defraud and steal money from PBE. These Defendants did so via mail and wire, and interfered with, disrupted, and eventually cause the loss of a multimillion dollar contract with Crown Castle.

13. As a result of the acts committed by Defendants PEM, Pyramid and Miller, Plaintiffs are entitled to three times their actual damages, attorney fees, and costs.

14. The Hobbs Act, 18 U.S.C. § 1951, was passed by the United States Congress to prohibit actual or attempted robbery or extortion affecting interstate commerce. The Act specifically states: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."

15. Defendants PEM, Pyramid and Miller herein used or attempted to use PBE's reasonable fear of economic harm in order to induce PBE to give up its money to them.

16. The conduct of Defendants PEM, Pyramid and Miller described below actually and potentially obstructed, delayed, and affected construction of cell sites used in interstate commerce.

## V.  FACTS COMMON TO ALL COUNTS

17. Plaintiff restates all allegations above as though fully restated herein.

18. As described below, Defendants PEM, Pyramid and Miller concocted a scheme to extort, defraud, and injure PBE's reputation and take its money (hereinafter, "PEM's scheme" or "PEM's plot"). PEM's plot was to defraud and trick PBE into hiring PEM as a subcontractor. PEM, in collusion with Defendants Pyramid and Miller, induced

fear in PBE by interfering with and disrupting PBE's construction project, thereby extorting and obtaining money from PBE which PEM did not earn.

19. On May 21, 2019, PBE entered into a Construction Master Services Agreement with Crown Castle USA, Inc. to perform certain communications tower construction services for Crown Castle (hereinafter, "Crown Agreement"). A copy of the Crown Agreement is attached hereto at Exhibit A. Under the Crown Agreement, PBE was offered over one million dollars of construction and engineering work for Crown Castle.

20. Under the Crown Agreement, PBE commenced work for Crown at various cell sites located in Indiana (hereinafter, the "Crown project"). Through these Defendants' conduct further detailed below, PEM, Pyramid and Miller conducted or participated, directly or indirectly, in the affairs of the RICO Enterprise through a pattern of racketeering activity, and conspired to do so, in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.

21. Under the guise of working as subcontractor or lower tier contractor on the Crown project, PEM colluded with Miller to defraud PBE and trick PBE into accepting PEM as the subcontractor or lower tier contractor on the Crown project under the Crown Agreement, by falsely promising PBE that PEM would provide subcontractor services fulfilling the requirements of the Crown Agreement.

22. Defendants PEM, Pyramid and Miller through the RICO Enterprise further described below, engaged in a pattern of racketeering within the meaning of 28 U.S.C. § 1961(1)(A) by causing to be committed various acts of repeated and systematic violations

of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), and extortion within the meaning of the Hobbs Act.

23. On information and belief, PEM became aware of the Crown Agreement in June, 2019.

24. In July, 2019, PEM approached PBE with an offer to work as a subcontractor or lower tier contractor under the Crown Agreement knowing it was not qualified to do this type of work, and also knowing it was not authorized to do business in Indiana, in violation of Burns Ind. Code Ann. § 23-0.5-5-2(a).

25. On July 15, 2019, August 6, 2019, August 18, 2019, and August 28, 2019 PEM, Pyramid and Miller fraudulently told PBE via wire, email and telephone that if PBE signed a subcontractor agreement that PEM would provide labor, materials and supervision on Crown project sites. On those same occasions PEM, Pyramid and Miller also fraudulently told PBE that if it engaged PEM as subcontractor or lower tier contractor for the Crown project, that PEM, Miller, Atlantic and Chesapeake would execute a contract meeting the subcontractor requirements of the Crown Agreement, and PEM would supply the manpower, resources and funds to fulfill the subcontractor claims under the Agreement.

26. Unknown to PBE, in fact PEM and Miller, had no intention of PEM executing a contract that met the subcontractor requirements of the Crown Agreement. Also unknown to PBE, PEM did not have the ability, resources or funds to fulfill the subcontractor claims under the Agreement, or to discharge PBE's obligations for payment thereof.

27. In reliance on the above false and fraudulent representations of PEM, Pyramid and Miller, PBE delegated work at certain Crown Castle Construction sites to PEM.

28. On July 12, 2019, as part of PEM's scheme, it utilized the wires and internet to transmit a fraudulently proposed subcontractor agreement to PBE. A copy of the agreement proposed by PEM is at Exhibit B.

29. On July 31, 2019, counsel for PBE transmitted the counter proposed agreement at Exhibit C to PEM. The agreement that PEM proposed was wholly unacceptable under the Crown Agreement, as well as fraudulent and false as a contradiction of the above representations of PEM, Pyramid and Miller.

30. However, in order to maintain progress of construction that PBE had already commenced at certain Crown Castle Construction sites, PBE was forced into an interim oral agreement with PEM that was structured to meet Crown Castle's requirements until PEM executed the required appropriate agreement with PBE. A copy of the counter agreement is at Exhibit C.

31. PBE made multiple partial payments to PEM during July, August and September 2019 totaling $35,000.00, as evidence of good faith to PEM under the interim oral agreement, with the understanding that PEM would enter into the requisite appropriate subcontractor agreement expeditiously.

32. Instead of entering the requisite appropriate agreement, on August 27, 2019 PEM, Pyramid and Miller submitted the agreement at Exhibit D to PBE via email again

doing so in an illegal and fraudulent attempt to carry out PEM'S scheme. The agreement at Exhibit D again contradicted PEM's, Pyramid's and Miller's false representations described above. PEM, Pyramid and Miller submitted Exhibit D in bad faith, to coerce and frighten PBE into surrendering to their demands. As a result, to maintain progress at the ongoing construction sites, and salvage PBE's reputation, PBE was forced to pay workers whom PEM was supposed to have already paid, lest the workers abandon the project sites. PBE was forced to pay labor and expenses directly for these workers as well as equipment costs, all of which costs PEM, Pyramid and Miller had promised to pay.

33. Due to PEM's, Pyramid's and Miller's bad faith, fraudulent refusal to enter into an authorized subcontractor agreement, PBE had to pay directly for labor, materials and expenses.

34. Due to PEM's, Pyramid's and Miller's bad faith refusal to enter into an authorized subcontractor agreement, construction crews were not paid, and progress at the relevant sites ceased, causing Crown Castle to terminate its agreement with PBE and work on existing and future Crown Castle projects. The loss of these projects has resulted in the loss of contracts with Crown Castle worth over one million dollars in revenue.

## COUNT I: RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT

35. Plaintiff restates all allegations above as though fully restated herein.

36. At all relevant times, there was in full force and effect in the United States of America, a certain statute, namely, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

37. At all relevant times, there was in full force and effect in the United States of America certain statutes commonly referred to as the mail and wire fraud statutes, respectively, 18 U.S.C.A. §§ 1341 and 1343.

## A. A RACKETEERING ENTERPRISE

38. Plaintiff incorporates all the foregoing paragraphs as if fully rewritten herein.

39. A racketeering enterprise exists among Defendants PEM, Pyramid and Miller to unlawfully obtain money from PBE. PEM, Pyramid and Miller combined, conspired, confederated and agreed with each other, and with others known and unknown (collectively, the "RICO Enterprise") to devise and intend to devise a scheme and artifice to defraud PBE as to a material matter and to obtain and extort money and property by means of false and fraudulent pretenses, representations, and promises by causing signals and sounds to be transmitted by wire in interstate and foreign commerce, for the purpose of executing and attempting to execute the scheme and artifice, as set forth herein.

40. The RICO enterprise operates through PEM. The RICO enterprise has an organizational structure and policies designed to accomplish the following goals:

  a) The first goal of the racketeering enterprise is to operate a facially legal entity, PEM, to conduct a business scheme to defraud and extort from individuals such as Plaintiff.
  b) The second goal of the racketeering enterprise is to attract clients by misrepresenting the terms upon which PEM will provide services.

c) The third goal of the racketeering enterprise is to enter into sub contracts upon false grounds.

d) The fourth goal of the racketeering enterprise is to use the funds obtained through subcontracts to enrich PEM, Pyramid and Miller, and to circumvent federal law against fraudulent inducement and extortion.

41. The enterprise has a history of operating within Ohio, Indiana, Texas and throughout the United States.

42. The enterprise is engaged in interstate commerce and its activities have a substantial effect on interstate commerce as follows:

a) The enterprise receives money through the mails and wires unlawfully from borrowers and deposits that money into financial institutions engaged in interstate commerce.

b) The enterprise utilized the means of telephone calls, email and mail in the regular course of business to communicate among themselves, to obtain the transfer of funds, and to induce PBE into remitting funds to PEM.

c) The enterprise obstructed, delayed, and affected construction of cell sites used in interstate commerce

## B: FEDERAL RICO VIOLATION

43. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

44. Defendants PEM, Pyramid and Miller, individually and collectively, through their control of the enterprise, violated 18 U.S.C. § 1962(c) by conducting the enterprise's affairs through a pattern of racketeering activity as defined in 18

U.S.C. § 1961(1)(B) consisting of numerous acts of mail and wire fraud and extortion in violation of 18 U.S.C. §§ 1341, 1343, and 1951

45. Defendants PEM, Pyramid and Miller conspired among themselves that income, in the form of payments paid by PBE, would be received by Defendant PEM; such income would be derived, directly or indirectly, from a pattern of activity unlawful under 18 U.S.C. §§ 1961(1), 1961(5), and 1962(a) – to wit: multiple, repeated and continuous illegal acts involving mail and wire fraud and extortion in violation of 18 U.S.C. §§ 1341, 1343, and 1951. Specifically, Defendants PEM, Pyramid and Miller committed the following predicate acts:

  a) PEM and Miller placed telephone calls to PBE on July 15, 2019, August 6, 2019, August 8, 2019, August 18, 2019, August 28, 2019 and others to fraudulently induce it to remit funds.

  b) PEM, Pyramid and Miller used PEM to attempt to manipulate PBE into paying 90% of funds received from Crown Castle.

  c) PEM, Pyramid and Miller also used PEM as a conduit to divert funds to PEM and Miller.

  d) PEM, Pyramid and Miller obtained funds from PBE on July 15, 2019, August 6, 2019, August 8, 2019, August 18,, 2019 and others without providing labor, materials or supervision, and absconded with equipment.

  e) On July 15, 2019, August 6, 2019, August 8, 2019 and others PEM, Pyramid and Miller fraudulently told PBE via wire email that if PBE signed a subcontractor agreement that PEM would provide labor, materials and supervision on Crown project sites.

  f) On July 15, 2019 PEM, Pyramid and Miller also fraudulently told PBE that if it engaged PEM as subcontractor or lower tier contractor for the Crown project, that PEM, Pyramid, Miller, Atlantic and Chesapeake would execute a contract meeting the subcontractor requirements of the Crown Agreement, and PEM would supply the manpower, resources and funds to fulfill the subcontractor claims under the Agreement.

g) On July 12, 2019, as part of PEM's scheme, PEM utilized the wires and internet to transmit a fraudulently proposed subcontractor agreement, Exhibit B, to MBE.

h) In order to maintain progress of construction that PBE had already commenced at certain Crown Castle Construction sites, PBE was forced into an interim oral agreement with PEM that was structured to meet Crown Castle's requirements until PEM executed the required appropriate agreement with PBE. See Exhibit C.

i) PBE made several partial payments to PEM on or about July 15, 2019, August 8, 2019 and August 18, 2019 totaling $35,000.00 which sums were extorted from PBE in violation of the Hobbs Act.

j) On August 27, 2019 PEM, Pyramid and Miller submitted the agreement at Exhibit D to PBE via email again doing so in an illegal and fraudulent attempt to carry out PEM'S scheme.

k) On July 15, 2019, August 8, 2019, August 18, 2019 and others PBE paid directly for labor, materials and expenses that are PEM's obligation.

46. The foregoing predicate acts of PEM, Pyramid and Miller were continuous in that they began in July 2019 and continue until the present with PBE's continuing payments directly for labor, materials and expenses that are PEM's obligation. The fraud and extortion thus continue and the public at large is in danger of said Defendants' continued pattern of corrupt activities.

47. PBE has been damaged by the violation of the federal RICO statute by PEM, Pyramid and Miller, and PBE is entitled to compensatory and punitive damages, interest, costs and attorneys fees.

## COUNT II: INTENTIONAL MISREPRESENTATION

48. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

14

49. PEM, Pyramid and Miller intentionally misrepresented their subcontractor arrangement and capabilities to PBE in both verbal and email communications as follows: July 12, 2019, August 6, 2019, August 8, 2019, August 18, 2019 and August 28, 2019, PBE relied upon these representations of the agreement when funds were released to PEM.

50. PEM, Pyramid and Miller were aware when they stated that they would provide labor, material and supervision that these statements were false.

51. PEM, Pyramid and Miller with wanton disregard for PBE's interests and malice, intentionally misled PBE and thereby have caused damage to PBE for which PEM, Pyramid and PBE are liable in compensatory and punitive damages, interests, costs and attorneys fees.

## COUNT III: FRAUD

52. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

53. As described above, on multiple occasions PEM, Pyramid and Miller fraudulently told PBE that if it signed a subcontractor agreement that PEM would provide labor, materials and supervision on Crown project sites.

54. The fraud by PEM, Pyramid and Miller stating PEM would provide the foregoing services induced PBE to agree to the terms of an oral contract, terms that PEM, Pyramid and Miller intended to breach and did so breach.

55. PBE has been damaged by the breach of PEM, Pyramid and Miller, and they are liable in compensatory and punitive damages, interest costs and attorneys fees. Further, because PEM was used to cause tortious injury to PBE, PEM's corporate existence should be disregarded and its members held personally liable for the injury to PBE.

### COUNT IV: DISGORGEMENT

56. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

57. To the extent Defendants breached fiduciary duties owed to PBE, PBE is entitled to disgorgement of any amounts realized by Defendants by reason of their breach.

### COUNT V: MISAPPROPRIATION OF NAME AND GOODWILL

58. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

59. Through its unauthorized contact with Crown under the guise of the PBE's subcontractor, PEM misappropriated PBE's public name, persona, and goodwill to extract unauthorized funds. PBE is entitled to recovery of all funds raised by PEM in PBE's name.

### COUNT VI: BREACH OF CONTRACT

60. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

61. PEM, Pyramid and Miller have breached the parties' agreement by failing to provide construction services orally agreed upon.

62. On information and belief, PBE is the loss payee and additional insured on general liability insurance policies issued by Atlantic and Chesapeake to PEM and Miller for transactions with PBE.

63. PEM, Pyramid and Miller through their breach have caused PBE to not only absorb substantial losses but have also caused the loss of current and future Crown Castle business valued at over one million dollars.

64. PBE has been damaged by the actions of Defendants described above and all Defendants are liable to Plaintiff in compensatory damages, interest, cost, and attorneys fees.

## COUNT VII: DECLARATORY JUDGMENT

65. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

66. PBE seeks a declaration that Atlantic is obligated to provide insurance coverage, subject to its respective policy limits, for the liabilities and the amount of damages owed by PEM, Pyramid and Miller to PBE pursuant to Counts I through VII of this Amended Complaint.

67. PBE seeks a declaration that Chesapeake is obligated to provide insurance coverage, subject to its respective policy limits, for the liabilities and the amount of damages owed by PEM, Pyramid and Miller to PBE pursuant to Counts I through VII of this Amended Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks the Court to:

1. Enter judgment in favor of PBE and against all Defendants, jointly and severally, in compensatory damages in an amount not less than $75,000.00 exclusive of interest and costs, plus attorney fees, pre-judgment and post judgment interest and costs of this litigation.

2. Enter judgment in favor of PBE and against all Defendants, jointly and severally, in punitive damages in an amount not less than three times compensatory damages, or $225,000 plus interests, costs and attorney's fees.

3. Order that the corporate entity of PEM and Pyramid be disregarded and their members and shareholders made personally liable.

4. Issue a declaration that:

   a. Atlantic is required to and obligated to provide insurance coverage for PEM, Pyramid and Miller for any and all of their liability pursuant to Counts I through VII of the Complaint;

   b. Chesapeake is required to and obligated to provide insurance coverage for PEM, Pyramid and Miller for any and all of their liability pursuant to Counts I through VII of the Complaint.

5. Award PBE all further appropriate relief.

                        *s/Percy Squire, Esq.* _____
                        Percy Squire (0022010)
                        Percy Squire Co., LLC
                        341 S. Third Street, Suite 10
                        Columbus, Ohio 43215
                        (614) 224-6528, Telephone
                        (614) 224-6529, Facsimile
                        Psquire@sp-lawfirm.com

## **JURY DEMAND**

Plaintiff hereby demands that all issues triable as of right to a jury be presented to a jury.

                        *s/Percy Squire, Esq*_____
                        Percy Squire (0022010)