**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **PETERS BROADCAST ENGINEERING, INC.,** | ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 1:21-cv-00219-HAB-SLC** |
| **PEM CONSULTING GROUP, LLC, *et al.*,** | ) ) ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a motion to dismiss and a supporting memorandum filed by

Defendant Chesapeake Insurance ("Chesapeake") pursuant to Federal Rule of Civil Procedure

12(b)(2) and 12(b)(6), asking that the Court dismiss Plaintiff Peters Broadcast Engineering,

Inc.'s ("PBE") claims against Chesapeake in Count VII of the complaint. (ECF 48, 49). PBE

timely filed a response and accompanying brief (ECF 52, 53) in opposition to the motion, and

Chesapeake timely filed a reply (ECF 56). The District Judge subsequently referred this matter to

the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §

636(b) and Local Rule 72-1. (ECF 81). For the following reasons, I recommend that

Chesapeake's motion to dismiss (ECF 48) be GRANTED. I further recommend that PBE be

given leave to file an amended complaint.

### I. FACTUAL AND PROCEDURAL BACKGROUND

PBE initiated this lawsuit on June 3, 2021 (ECF 2), and its complaint alleges, in relevant

part, the following:

On May 21, 2019, PBE, a telecommunications engineering company, obtained a "multimillion dollar contract" ("Crown agreement") to perform communications tower construction services at cell tower sites for Crown Castle ("Crown project"). (*Id.* ¶¶ 4, 12, 19). Those construction sites were located in Indiana. (*Id.* ¶ 20). PEM Consulting Group, LLC ("PEM"), a so-called subcontractor, approached PBE and offered to provide subcontractor services for the Crown project upon learning of the Crown agreement. (*Id.* ¶¶ 23-24). PEM, along with Pyramid Consultants & Construction, LLC, and Phillip E. Miller (together "PEM" defendants), represented in various communications that, if PBE would sign a subcontractor agreement with them, they would provide labor, materials, supervision on the Crown project, resources, and funds. (*Id.* ¶ 25). According to PBE, those promises were falsely made to induce it to enter into a subcontractor agreement with the PEM defendants, though the PEM defendants knew they had no intentions—and could not—fulfill the promises, as they were not qualified and did not have the resources or funds. (*Id.* ¶¶ 21, 24, 26). PEM further promised it would execute a contract with Atlantic Casualty Insurance Company ("Atlantic") and Chesapeake, its general liability insurers, to fulfill the subcontractor requirements in the Crown agreement. (*Id.* ¶¶ 8, 25). "On information and belief," PBE was made a loss payee and additional insured on the general insurance policies issued to PEM by Atlantic and Chesapeake. (*Id.* ¶ 62).

Without signing an agreement, but on reliance of PEM's promises, PBE began delegating work to PEM on certain Crown project sites. (*Id.* ¶ 27). Subsequently, PEM sought to formalize the agreement by sending a proposed subcontractor agreement, which PBE refused as it was "wholly unacceptable" and against the representations PEM defendants had previously made to PBE. (*Id.* ¶¶ 28-29). Instead, the parties entered into an oral agreement pending execution of a satisfactory written agreement. (*Id.* ¶ 30). Pursuant to the oral agreement, under which PEM

would fulfill the subcontractor specifications "structured to meet Crown Castle's requirements," PBE made several payments totaling $35,000 over the course of three months to PEM. (*Id.* ¶¶ 30, 31). However, PEM did not fulfill the requirements of their oral agreement, for example by failing the pay the Crown project workers—which PBE "was forced to pay"—and insisting on signing the agreement PBE had already rejected. (*Id.* ¶ 32). PEM's refusal to enter into the requisite agreement, compounded by the failure to pay the construction crew, led to the project's standstill. (*Id.* ¶ 34). Ultimately, Crown Castle terminated the Crown agreement and PBE lost any present and future opportunities to do business with Crown Castle. (*Id.* ¶¶ 34, 63).

As a result, PBE filed suit, claiming that the PEM defendants operated a "sham entity." (*Id.* at 2). In the seven-count complaint, PBE asserts a federal claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and state-law claims against the PEM defendants in Counts I through VI, and a declaratory judgment action against Defendants Atlantic and Chesapeake in Count VII, seeking that they both provide insurance coverage to PBE for the liabilities and damages owed by the PEM defendants. (*Id.* at 2; *Id.* ¶ 67).

PBE seeks compensatory and punitive damages, interests, costs, attorney's fees, an "[o]rder that the corporate entity of PEM and Pyramid be disregarded and their members and shareholders made personally liable," a declaration that Atlantic and Chesapeake are "required to and obligated to provide insurance coverage" for the PEM defendants' liability, and any other relief or award the Court deems appropriate. (*Id.* at 18).

Chesapeake filed the instant motion, moving to dismiss the complaint against Chesapeake for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6). (ECF 47, 48).

## II. LEGAL STANDARD

### A. 12(b)(2)

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has personal jurisdiction over a party. There are two forms of personal jurisdiction: general and specific. "General jurisdiction is all-purpose; it permits a defendant to be sued in a forum for *any* claim, regardless of whether the claim has any connection to the forum state." *Lexington Ins. Co. v. Hotai Ins. Co.,* 938 F.3d 874, 878 (7th Cir. 2019) (citing *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction exists when the defendant's contacts are "so continuous and systematic as to render it essentially at home in the forum state." *Id.* (alteration, citation and internal quotation marks omitted).

On the other hand, "[s]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation and internal quotation marks omitted). Specific jurisdiction "may be condensed to three essential requirements . . . ." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Id.* (citation omitted). Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. *Id*. Third, any exercise of personal jurisdiction must "comport with traditional notions of fair play and substantial justice." *Id*. (citations omitted). "When challenged, the plaintiff has the burden of proving personal jurisdiction." *John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018) (citing *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014)).

4

*B. 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011) ("While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When a party moves to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and read in the light most favorable to the nonmovant. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000).

### III. ANALYSIS

*A.   Personal jurisdiction*

The parties do not dispute that the Court does not have general jurisdiction, rather, they disagree as to whether the acts alleged in the complaint vest the Court with personal jurisdiction over Chesapeake. (ECF 48 at 6; ECF 53 at 7-10). On one hand, Chesapeake argues that PBE has not made any specific allegations connecting Chesapeake to Indiana. (ECF 48 at 6). Specifically, it asserts that the complaint's allegations do not show that Chesapeake transacts business,

supplies goods or services, has real property, provides insurance, or took action or failed to act in the state to satisfy Indiana's long-arm statute, and that PBE has not alleged that Chesapeake purposefully availed itself of the laws of Indiana based on contacts that are more than "random, fortuitous, or attenuated." (ECF 48 at 6 (quotation marks omitted); ECF 56 at 2-3). On the other hand, PBE contends it properly alleged that Chesapeake availed itself of the privilege of acting in Indiana and that there are minimum contacts sufficient to establish personal jurisdiction over Chesapeake. (ECF 52, 53 at 8-9).[1]

As a threshold matter, Chesapeake cites to Seventh Circuit cases for the proposition that Chesapeake was not "doing business" in Indiana under the state long-arm statute, thus rendering personal jurisdiction improper. (ECF 56 at 2-3). However, the Indiana long-arm statute was amended in 2003 to incorporate a catch-all provision extending its jurisdictional reach to the extent permitted by the Constitution. *Richards & O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n.6 (Ind. Ct. App. 2002) (Najam, J., concurring); *see* Ind. R. Trial P. 4.4(A); *see also Emp. Benefit Managers, Inc., of Am. v. A Medex Transition Admin. Co.*, No. 1:04-CV-443-TS, 2006 WL 1128646, at *2 (N.D. Ind. Apr. 24, 2006) ("Ind. Tr. R. 4.4(A) has been adopted and incorporated into the Indiana Code. Ind. Code § 34-8-2-2. Although technically a trial rule, it performs the same function as a long-arm statute."). Therefore, the appropriate standard is whether due process permits an exercise of jurisdiction, a standard that is broader than the enumerated acts (such as "doing business") under the Indiana long-arm statute. *See Cunningham v. Foresters Fin. Servs., Inc.*, 300 F. Supp. 3d 1004, 1011-12 (N.D. Ind. 2018) (The Indiana long-arm statute "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal

---

[1] PBE further contends that the alleged injuries arose out of activities occurring in Indiana and that the forum state is reasonable. (ECF 53 at 8-10). Chesapeake does not rebut those arguments, and, as such, the only dispute regards whether Chesapeake purposefully availed itself of the laws of Indiana.

jurisdiction is consistent with the Federal Due Process Clause. Thus, the statutory question merges with the constitutional one . . . ." (alteration in original) (citations and internal quotation marks omitted)); *compare* Ind. R. Trial P. 4.4(A) and *Int'l Truck & Engine Corp. v. Dawson Int'l Inc.*, 216 F. Supp. 2d 754, 757-58, 757 n.1 (N.D. Ind. 2002) ("Indiana's statute is an 'enumerated act' statute."), *with Felland*, 682 F.3d at 673 (setting forth three prongs in due process inquiry).[2] As such, the crux of the dispute is whether Chesapeake purposefully availed itself of the laws of the state of Indiana under the constitutional due process requirements.

A complaint's allegations must show that a defendant "purposefully availed [itself] of the privilege of conducting business in the forum state *or purposefully directed [its] activities at the state*." *Felland*, 682 F.3d at 673 (emphasis added). The bedrock principle of the purposeful availment inquiry is that it must be foreseeable for a defendant to be hailed into a forum's court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As such, the question is whether there are "'minimum contacts' between the defendant and the forum State." *Lexington Ins. Co.*, 938 F.3d at 879 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 291). Those contacts must be more than "random, fortuitous, or attenuated" for a court to exercise its jurisdiction over a defendant. *N. Grain Mktg., LLC*, 743 F.3d at 493 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). PBE points to three facts purportedly showing that Chesapeake availed itself of the laws in Indiana: (1) its status as an Indiana resident and citizen, (2) its status as an additional insured and loss payee on Chesapeake's insurance policy, and (3) the fact that the insurance policy was granted in connection to projects occurring in Indiana,

---

[2] Chesapeake argues that PBE did not show that it was transacting or doing business in Indiana under Indiana's long-arm statute. (ECF 56 at 2-3). The Indiana long-arm statute used to be an enumerated statute which identified "doing business or transacting business" in the state as a predicate for jurisdiction. *See Int'l Truck & Engine Corp.*, 216 F. Supp. 2d at 757-58 (citing *Am. Econ. Ins. Co. v. Felts,* 759 N.E.2d 649, 658 (Ind. Ct. App. 2001)). However, the statute's jurisdictional reach now extends to the limits of the Constitution's Due Process Clause. Thus, the relevant question is whether the complaint fulfills the three requirements set forth in *Felland*. *See* 682 F.3d at 673.

therefore providing "certain insurance rights and benefits to PBE in connection with injurious events that could transpire and that in fact transpired . . . at Indiana-based Crown Project sites." (ECF 53 at 8). Therefore, PBE argues that those facts establish Chesapeake purposefully directed its activities in Indiana as its contacts with the state were not merely random, fortuitous, or attenuated (*id.* at 8, 9), and as it was foreseeable that Chesapeake would be hauled into court in Indiana (*id.* at 9).

First, PBE's status as "an Indiana citizen and resident" is insufficient for the Court to exercise personal jurisdiction over Chesapeake. (*See* ECF 53 at 8). Personal jurisdiction over a defendant may not be predicated on the plaintiff's contacts, including the plaintiff's state of residency or citizenship. Rather, the minimum contacts analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Lexington Ins. Co.*, 938 F.3d at 879 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Therefore, PBE's mere status as an Indiana resident and citizen cannot show that Chesapeake is subject to the personal jurisdiction of this Court.

Second, that PBE's status as an additional insured and loss payee serves as a basis for personal jurisdiction is likewise an unavailing argument. (*See* ECF 53 at 8). Under Seventh Circuit law, "[a]n out-of-state party's contract with an in-state party . . . does not alone establish minimum contacts." *Cont'l Cas. Co. v. S. Co.*, 284 F. Supp. 2d 1118, 1125 (N.D. Ill. 2003) (citing *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir.2002)); *see also Burger King Corp.,* 471 U.S. at 478. "Rather, for a contract, insurance or otherwise, to provide the basis for personal jurisdiction, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant.'" *Wash. Nat'l Life Ins. Co. v.*

*Calcasieu Parish Sch. Bd.*, No. 05 C 2551, 2006 WL 1215413, at *6 (N.D. Ill. May 2, 2006) (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997)); *N. Grain Mktg., LLC*, 743 F.3d at 493. Thus, that Chesapeake contracted with PBE, an "in-state party," cannot serve as a basis for personal jurisdiction, *see Cont'l Cas. Co.*, 284 F. Supp. 2d at 1125, and the relevant inquiry is whether facts, such as the contract's terms, the parties' course of dealing, their negotiations and contemplated consequences, can establish purposeful availment, *see Wash. Nat'l Life Ins. Co.*, 2006 WL 1215413, at *6.[3] This segues into PBE's third and last argument, that personal jurisdiction exists because the insurance coverage contemplated liability that could occur in Indiana.

It is possible the insurance contract's contemplated coverage of Indiana-based Crown project establishes personal jurisdiction over Chesapeake, but the allegations in the complaint are insufficient to conclude so at this juncture. The challenge, here, is that the Court does not have access to the insurance contract between Chesapeake, PBE, and PEM. *See Wash. Nat'l Life Ins. Co.*, 2006 WL 1215413, at *6 ("Without knowing more about whether these contacts relate to the agreements at issue here . . . it is difficult to determine whether they are the type of 'minimum contacts' with the forum that could support a finding of specific personal jurisdiction."). PBE may have intended to attach exhibits which are referenced throughout the complaint (ECF 2 ¶¶ 19, 28-30, 32, 45 (citing Exhibits A, B, C, and D)) and which may include the insurance contract, but they do not appear on the docket.

Whatever the reason for the missing attachments, I cannot ascertain facts indicating that Chesapeake availed itself of the privilege of doing business in Indiana based on the complaint,

---

[3] Chesapeake cites a Louisiana Court of Appeals case for the proposition that an insurer is not subject to a court's personal jurisdiction simply for making that individual an additional insured. (ECF 56 at 1-3). Because I find that Seventh Circuit precedent does not permit exercise of jurisdiction solely because Chesapeake made PBE an additional insured and loss payee, I need not analyze whether Chesapeake's proposed Louisiana case applies here.

such as prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *See Wash. Nat'l Life Ins. Co.*, 2006 WL 1215413, at \*6. There are no facts alleging a nexus between Indiana and the negotiations that took place to establish insurance coverage, including the place of acceptance and contemplated performance, and the complaint is devoid of allegations pertaining to the contracting process between PBE and Chesapeake, lacking information regarding potential communications and payment between the two parties.

Nor does the complaint allege any other facts that may establish the existence of Chesapeake's minimum contacts in Indiana. *See Royal Globe Ins. Co. v. Logicon, Inc.*, 487 F. Supp. 1245, 1247-48 (N.D. Ill. 1980) (relevant contacts to evaluate whether insurance contract establishes personal jurisdiction over insurer include sales in a state; maintaining a place of business, bank deposit, telephone, or telephone listing in the state; and the contract's place of acceptance and performance). Another fact that may have been relevant, again absent from the complaint, is whether Chesapeake solicited the insurance contract or business in Indiana. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 220-24 (1957) (delivering contract and mailing premiums established personal jurisdiction over insurer who solicited insurance contract from in-state resident); *Royal Globe Ins. Co.*, 487 F. Supp. at 1247 (discussing among other factors whether an insurance contract was solicited for purposes of personal jurisdiction assessment). On the contrary, PBE's complaint suggests that the PEM defendants solicited the contract on behalf of PBE for the additional coverage. (*See* ECF 2 ¶ 8 ("Miller and PEM represented to PBE that Atlantic and Chesapeake are its insurance carriers for transactions with PBE and that PBE would be made a loss payee and additional insured on their general liability insurance policies."); *id.* ¶

62 (stating "[o]n information and belief" that PBE was made an additional insured and loss payee on Chesapeake's general liability insurance).

Further, "the presence of a state within the scope of coverage creates no purposeful connection between the insurers and *that state*." *Lexington Ins. Co.*, 938 F.3d at 882. And the mere fact that the insurance contract contemplated coverage over acts occurring in Indiana is insufficient for the purposes of establishing personal jurisdiction, as "'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 881-82 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 295) ("Given this principle, the "worldwide coverage" clause cannot justify Wisconsin's—or any other state's—exercise of jurisdiction over [defendants] simply because the clause made suit in that state foreseeable."). Thus, PBE's last argument, too, fails.

Without more information, I cannot evaluate whether the insurance contract is more than a "random, attenuated, or fortuitous" contact with Indiana. And the case law is clear that PBE's mere status as an Indiana resident and citizen and as an additional insured and loss payee on the Chesapeake-issued liability coverage does not confer personal jurisdiction over it. In conclusion, I FIND that the facts alleged by PBE are not sufficient to establish minimum contacts showing that Chesapeake availed itself of the privilege of doing business or directing its activities in Indiana, and thus, that PBE has not made allegations sufficient to establish that the Court has personal jurisdiction over Chesapeake.

### B.  Failure to State a Claim

Chesapeake further moves to dismiss the complaint for failure to state a claim upon which relief may be granted, alleging that (1) PBE is barred from bringing its declaratory judgment claim against Chesapeake under the Indiana direct-action rule, and (2) PBE is not an

interested party under the Indiana Declaratory Judgment Act. (ECF 48 at 7). Those arguments are evaluated in turn.[4]

    1.  <u>Indiana's direct-action rule</u>

Chesapeake argues that PBE's claim is not the type that can be brought under the Indiana direct-action rule. (ECF 48 at 7-8). In response, PBE contends that the exception to the Indiana direct-action rule applies as PBE is not seeking damages under applicable insurance coverage for the acts of the insurer's bad faith or negligence, but rather a declaratory judgment that the insurance coverage under a policy exists in the first place. (ECF 53 at 13-14). PBE's argument is persuasive.

In Indiana, "[t]he 'direct action rule' bars a party from pursuing a claim based on the actions of an insured directly against the insurer." *City of S. Bend v. Century Indem. Co.*, 821 N.E.2d 5, 9 (Ind. Ct. App. 2005) (citation omitted); *see also Bennett v. Slater,* 289 N.E.2d 144 (1972). An exception to the rule applies "[w]here the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect . . . ." *Cmty. Action of Greater Indianapolis, Inc. v. Ind. Farmers Mut. Ins. Co.*, 708 N.E.2d 882, 886 (Ind. Ct. App. 1999) (citation omitted). This exception also applies in cases where a plaintiff is seeking declaratory judgment "whether an alleged tortfeasor's insurance carrier has denied coverage or is defending under a reservation of rights." *Wilson v. Cont'l Cas. Co.,* 778 N.E.2d

---

[4] Chesapeake further argues that "Counts I, II, III, IV, V and VI of the Complaint fail to allege any facts sufficient to state a claim against Chesapeake. Those counts only assert claims against PEM, Pyramid, and Miller." (ECF 48 at 7). In response, PBE states that those counts "were not intended to assert claims against Chesapeake . . . but, rather, allege claims against [the] three other defendants . . . ." (ECF 53 at 12). Thus, the parties agree that the only relevant claim against Chesapeake is the declaratory judgment action in Count VII. *See id.* ("Chesapeake's Rule 12(b)(6) Motion must be measured against the allegations in Count VII and Count VII only.").

849, 852 (Ind. Ct. App. 2002); *see also City of S. Bend*, 821 N.E.2d at 11. The Indiana Court of

Appeals clarified that:

> The kinds of actions which have been barred by the direct action rule are actions against
> the insurer for the insurer's own negligence or bad faith in handling claims. The kinds of
> actions which have been allowed by the exception are actions seeking only a declaration
> of the insurer's responsibilities *should the allegations regarding the insured's conduct be
> proven.*

*City of S. Bend*, 821 N.E.2d at 11 (emphasis added). Put simply, a plaintiff's declaratory

judgment action will fall within the "narrow" exception to Indiana's direct-action rule if "[the

plaintiff] is not seeking any direct recompense from the Insurers" but "is only seeking a

declaration that, if it were to prove its underlying case, the Insurers would be obligated to

provide coverage under the previously-issued policies." *Id.* In determining whether the exception

applies, courts evaluate the "civil complaint to determine the nature of [its] claim against" the

insurer. *Weist v. Dawn*, 2 N.E.3d 65, 68 (Ind. Ct. App. 2014). A complaint that does not set forth

a claim for declaratory relief or mentions declaratory relief or a complaint that requests only

monetary damages will mitigate against finding that a declaratory judgment is requested. *Id.* "In

the absence of a claim for declaratory relief, the direct action rule bars [a plaintiff's] claim

against [the insurer]." *Id.* (citation omitted).

While Chesapeake argued in its motion that the direct-action rule bars PBE's claim, it

seems to contemplate or concede in its reply that the exception, in fact, does apply. (*See* ECF 56

at 3 ("While it may be true, as Plaintiff contends . . . , that a claim for declaratory judgment may

be exempt from Indiana's direct-action rule . . . .")). And rightly so. The elements of the direct-

action rule exception are present in this case. First, PBE's only claim against Chesapeake in

Count VII seeks declaratory relief as opposed to actual damages. (ECF 2 ¶ 67 ("PBE seeks a

declaration that Chesapeake is obligated to provide insurance coverage . . . for the liabilities and

the amount of damages owed by [PEM defendants] pursuant to Counts I through VII . . . ."); *id.* at 18 (same)). Second, the complaint alleges that Chesapeake has provided insurance to the PEM defendants. (*Id.* ¶ 62 ("On information and belief, PBE is the loss payee and additional insured on general liability insurance policies issued by Atlantic and Chesapeake to PEM and Miller for transactions with PBE.")).[5] Third, and finally, there has been no judgment issued in this case as to the underlying liability of the PEM defendants, such that "if it were to prove its underlying case, [Chesapeake] would be obligated to provide coverage under the previously-issued policies." *City of S. Bend*, 821 N.E.2d at 11.

I need not consider Chesapeake's argument that "[w]hile it may be true . . . that a claim for declaratory judgment may be exempt from Indiana's direct-action rule, that does not provide the court with personal jurisdiction over Chesapeake." (ECF 56 at 3). Chesapeake's argument is either duplicative of those raised under its motion to dismiss for lack of personal jurisdiction (*id.* at 1-3) or is without merit as it is undeveloped.[6] In conclusion, I FIND that the exception to Indiana's direct-action rule applies in this case.

2. Declaratory Judgment

Next, Chesapeake argues that PBE is not a "person interested" under Indiana's Uniform Declaratory Judgment Act, *see* Ind. Code § 34-14-1-2, and that under the federal Declaratory

---

[5] In passing, Chesapeake states that it has only issued a workers' compensation insurance policy to PEM, not a general liability insurance policy. (ECF 48 at 7 n.2). However, because I must read the allegations set forth in the complaint in the light most favorable to the plaintiff, *Brokaw*, 235 F.3d at 1006, this statement does not help Chesapeake defeat the contention that the direct-action rule exception applies.

[6] Chesapeake only cites to *Austin v. Auto Handling Corp.*, which finds that although the exception to the direct-action rule applies, it does not confer jurisdiction over the defendant insurer. No. 1:18-CV-82-HAB, 2020 WL 1429830, at *1 (N.D. Ind. Mar. 24, 2020). However, there, the Court analyzed the application of subject-matter jurisdiction as opposed to personal jurisdiction. *Id.* at 2-3. As such, I cannot discern from Chesapeake's argument how that case supports its claim that PBE's declaratory judgment action "does not provide the [C]ourt with *personal* jurisdiction over Chesapeake." (ECF 56 at 3 (emphasis added)).

Judgment Act, the case is not sufficiently ripe for a court to determine its duty to indemnify. (ECF 48 at 7-8; ECF 56 at 4).

    *a.  Choice of law*

As a threshold matter, Indiana's Uniform Declaratory Judgment Act ("UDJA") is inapplicable to this case. PBE filed suit in this Court alleging both federal question jurisdiction, with pendent jurisdiction over state claims, and diversity jurisdiction as bases for the Court's subject-matter jurisdiction over the claims. (ECF 2 ¶ 1). Federal courts apply procedural federal law under either jurisdictional bases, and the federal Declaratory Judgment Act ("DJA") is procedural. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938); *e.g., Consol. City of Indianapolis v. Ace Ins. Co. of N. Am.*, No. 1:04-CV-01097-LJM-TA, 2004 WL 2538648, at *2 n.1 (S.D. Ind. Sept. 20, 2004) ("The [plaintiff], in its complaint, claims entitlement to declaratory relief pursuant to the [UDJA]. However, sitting in diversity, the Court applies state substantive law and federal procedural law." (citing Ind. Code 34-14-1-1 and *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 754 (7th Cir. 2004))); *Atl. Cas. Ins. Co. v. Right Way Auto Sales, LLC*, No. 2:21-CV-194-JPK, 2022 WL 910560, at *3 n.8 (N.D. Ind. Mar. 29, 2022) ("[T]he Supreme Court has characterized the [DJA] as procedural. . . ." (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950))).[7] Therefore, "[t]he federal, rather than the state, Declaratory Judgment Act controls [the] litigation," even if a claim is brought under Indiana statute or trial rule. *Inst. for Stud. Abroad, Inc. v. Int'l Stud. Abroad, Inc.*, 263 F. Supp. 2d 1154, 1156 (S.D. Ind. 2001).[8] Although the parties agree that PBE's duty-to-indemnify claim against Chesapeake rests on Indiana law (ECF 48 at 7; ECF 53 at 13), the federal DJA controls this case. Chesapeake does

---

[7] Of course, courts exercising federal question jurisdiction over a matter apply federal procedural law, as is the case here.

[8] The Indiana Declaratory Judgment Act is likewise a procedural rule under Indiana law. *Id.* at 1157.

not contest that PBE is an interested party under the federal DJA, and, because it is irrelevant whether PBE is an interested party under the UDJA, Chesapeake cannot defeat PBE's claim on the basis that PBE is not an interested party under the UDJA as the DJA applies.

     *b. Ripeness*

Turning to the substance of the federal DJA, Chesapeake argues that the case is not ripe for review as the complaint does not present a case or controversy. (ECF 56 at 4). To that end, it asserts that a duty to indemnify can only be ascertained after conclusion of the underlying action. (*Id.*). Chesapeake makes this argument to support its motion for failure to state a claim. But whether a complaint presents a case or controversy or whether a case is ripe are inquiries relevant to determine if a court has subject-matter jurisdiction under Rule 12(b)(1), not whether a complaint fails to state a claim under Rule 12(b)(6). *Austin*, 2020 WL 1429830, at *3; *see e.g.*, *Days Corp. v. Lippert Components, Inc.*, 558 F. Supp. 3d 689, 693 (N.D. Ind. 2021) ("Article III courts have subject matter jurisdiction only if there is an actual case or controversy." (citations and quotations marks omitted)). Nevertheless, because the Court must dismiss an action "if [it] determines at any time that it lacks subject-matter jurisdiction," the Court must determine the issue of ripeness raised by Chesapeake. Fed. R. Civ. P. 12(h)(3).

A declaratory judgment action must present the Article III requirement of a case or controversy. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937); *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (Declaratory Judgment Act does not dispense with the Article III case or controversy requirement); *Atl. Cas. Ins. Co.*, 2022 WL 910560, at *11. "Pursuant to Seventh Circuit precedent, 'a real disagreement' regarding the limits of insurance coverage, even though contingent on the injured party obtaining a judgment against the insured, is sufficient to satisfy Article III's case and controversy

requirement." *Atl. Cas. Ins. Co.*, 2022 WL 910560, at *11 n.29 (citing *Bankers Tr. Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 681 (7th Cir. 1992)); *Amling v. Harrow Indus. LLC,* 943 F.3d 373, 377-79 (7th Cir. 2019)).

Even if a complaint presents a case or controversy under Article III, as a general rule, "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Elec. Holdings Ltd.,* 353 F.3d 580, 583 (7th Cir. 2003) (citations omitted). In other words, courts have discretion to refuse issuing a declaratory judgment to determine an insurer's duty to indemnify before underlying liability is established, as this determination is generally premature. *Atl. Cas. Ins. Co.*, 2022 WL 910560, at *11 n.29 (citing *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010)); *see also Lear Corp.*, 353 F.3d at 583 (collecting cases). Thus, a court must evaluate whether "an early determination regarding the limits of liability will serve a useful purpose," and the determination should be delayed "only if . . . it turns on a factual issue at the heart of the . . . action." *Atl. Cas. Ins. Co.*, 2022 WL 910560, at *11 n.29; *Austin*, 2020 WL 1429830, at *2.

In the insurance context, several factors exist to determine whether a duty to indemnify is premature or whether it is ripe for adjudication: (1) the likelihood that the insured would be liable in the underlying litigation; (2) the high amount of damages for which the insured was likely to be liable; (3) the insured's inability to pay those damages if found liable; and (4) the likelihood that no other insurance policy would cover the damages. *Bankers Tr. Co.,* 959 F.2d at 680-82; *Consol. City of Indianapolis*, 2004 WL 2538648, at *3. "This rule is in place because a declaration regarding the duty to indemnify may have no real-world impact if no liability arises in the underlying litigation," and because producing a decision that may be irrelevant would

needlessly consume judicial resources. *Consol. City of Indianapolis*, 2004 WL 2538648, at *2 (citing *Lear Corp.,* 353 F.3d at 583).

Here, "a real disagreement" regarding the existence of insurance coverage exists such that PBE's complaint presents a case or controversy against Chesapeake. Chesapeake's legal interests are adverse to PBE's, as demonstrated by Chesapeake's desire to dismiss PBE's claims in the Southern District of Ohio and in this Court. Should Chesapeake prevail, it would vindicate its interest of not indemnifying PBE under the insurance contract. In fact, Chesapeake seems to contend that it did not provide any insurance coverage to PBE such that it would have no duty to indemnify, showing that it disputes PBE's coverage allegations. (*See* ECF 48 at 7, n.2); *see Austin*, 2020 WL 1429830, at *2 ("Plaintiffs' claim . . . does not demonstrate the existence of an actual controversy involving the insurers. There is no indication that either insurer has disputed coverage for Defendants' potential liability.").

However, the four ripeness factors elaborated in *Bankers Trust* weigh against exercising the Court's discretion because a declaratory judgment would be premature. Issuing a declaratory judgment on Chesapeake's duty to indemnify would be irrelevant if PBE does not prevail on its claims. *See Consol. City of Indianapolis*, 2004 WL 2538648, at *3; *Austin*, 2020 WL 1429830, at *2-3. "The Court has no basis on which to evaluate the likelihood of [PEM defendants'] liability in the underlying action, the level of liability likely to be incurred, or [PEM defendants'] ability to pay any possible damages in the underlying action." *Consol. City of Indianapolis*, 2004 WL 2538648, at *3; *Casual Dining Dev., Inc. v. QFA Royalties, LLC*, No. 07-CV-726, 2008 WL 4186692, at *3 (E.D. Wis. Sept. 5, 2008) ("[T]his court has no basis for evaluating the likelihood of Casual Dining's success in defending against its other lawsuits, evaluating the level of liability that would likely be incurred, or evaluating its ability to pay any resulting damages.").

The Court was not presented with the insurance policies at issue, challenging my ability "to determine whether coverage exists, let alone the extent of coverage." *Consol. City of Indianapolis*, 2004 WL 2538648, at *3. The only evidence pertaining to insurance coverage suggests that Chesapeake did not issue general liability insurance to the PEM defendants (and in turn PBE), which, mitigates against finding that PBE was insured for PEM's general liability by Chesapeake in the first place. (*See* ECF 48 at 7 n.2 ("Chesapeake issued a workers' compensation insurance policy to PEM; not a general liability insurance policy.")). The "factual issue" of whether coverage issues are "at the heart" of the action, suggesting declaratory judgment should be delayed as it would otherwise be premature. *See Atl. Cas. Ins. Co.*, 2022 WL 910560, at *11 n.29. Finally, resolving the underlying liability simultaneously as the insurer's duty to indemnify would achieve convenience, but "convenience concerns cannot trump Article III's ripeness requirement." *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1088 (N.D. Ill. 2004). Thus, although the case meets the controversy requirement of Article III, the present complaint does not compel the exercise of this Court's discretion in finding the declaratory judgment action sufficiently ripe.[9]

In conclusion, I FIND that, although Count VII makes a duty-to-indemnify claim against Chesapeake and that the exception to the Indiana direct-action rule applies, such that Indiana law

---

[9] PBE argues that the factors enumerated in *NUCOR* militate for the exercise of the Court's discretion in issuing a declaratory judgment. (ECF 53 at 16-17); *see NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994). But the *NUCOR* factors ignore the considerations a court must give when deciding whether it should exercise its discretion in issuing a declaratory judgment in duty-to-indemnify cases. The *NUCOR* factors have been interpreted as designed to establish "whether to grant a declaratory judgment," meaning when a declaratory judgment is "appropriate." *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1087-88 (N.D. Ill. 2004). Before evaluating whether declaratory judgment is "appropriate," it must survive the ripeness test which the *Bankers Life* factors are designed to address. *Id.* Here, because the inquiry does not surmount the ripeness test, I need not analyze whether *NUCOR* factors render declaratory judgment appropriate.

does not bar the duty-to-indemnify claim, issuing a declaratory judgment in this case would be premature.

### C. Leave to amend

Chesapeake finally contends that the Court should not grant leave to amend PBE's complaint because it would be futile and because PBE's demand is untimely. (EFC 53 at 17-18; ECF 56 at 4).

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182 (1962). Those reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment. . . ." *Id.* "That leave be 'freely given' is especially advisable when such permission is sought after the dismissal of the first complaint." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.*; *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

In this case, PBE should be granted leave to amend its complaint. PBE could allege new facts in an amended complaint which would cure the complaint's jurisdictional and substantive deficiencies, such that amendment would not be futile or untimely. Chesapeake argues that "[n]o amendment of the complaint can cure the fact that Chesapeake does not do business in Indiana and has no connection to the state," thus making amendment futile. (ECF 56 at 5). However, as

stated before, the benchmark for personal jurisdiction in Indiana is not solely transacting or doing business in the state but is the minimum contacts inquiry under the Due Process Clause, which permits an exercise of jurisdiction "to the full extent of the law." *See Richards & O'Neil, LLP*, 774 N.E.2d at 550 n.6. There are certainly facts, such as the parties' prior negotiations and contemplated future consequences, the terms of the insurance contract, and the parties' actual course of dealing, that may remedy the jurisdictional deficiencies and establish personal jurisdiction. *See RAR, Inc.* 107 F.3d at 1277. Those same facts, in turn, could be used by the Court to ascertain whether the declaratory judgment request is sufficiently ripe. Further, and as stated previously, PBE refers to exhibits throughout its complaint, but there are no such attachments to the complaint. (ECF 2 ¶¶ 19, 28-30, 32, 45). An amended complaint *with* attachment of the exhibits (such as the insurance agreement between Chesapeake, PEM, and PBE defendants) could remedy the issues identified here. Thus, amendment would not be futile.

Chesapeake also contends that leave to amend PBE's complaint would be untimely because of the procedural history of this case. Chesapeake points to the fact that PBE initially filed the lawsuit in the United States District Court for the Southern District of Ohio (ECF 56 at 4), where the complaint was allegedly amended once in response to Chesapeake's similar motion to dismiss for insufficiency of service of process, lack of jurisdiction, and for failure to state a claim upon which relief may be granted (*id.* at 4-5). Chesapeake states that the same deficient claims were filed against the defendants in this Court after the complaint was dismissed for improper venue and lack of personal jurisdiction by the Southern District of Ohio court, and despite PBE having many opportunities to amend its complaint. (*Id.* at 5). This argument is not persuasive.

If PBE filed the same claims against Chesapeake in Ohio and Indiana, it does not necessarily follow that the allegations in the complaint in one state would be insufficient in another. The same jurisdictional allegations in one state may be deficient if those allegations have a nexus with another state, as it appears to be the case here. (*See* ECF 48-1 at 12-15). In tandem, if PBE could not survive a motion to dismiss for lack of personal jurisdiction in the Southern District of Ohio, that is for the courts in that jurisdiction to say. The outcome of that case does not dictate what happens within the Seventh Circuit. *See McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) ("Although the law of the transferor court continues to apply when a diversity case is transferred from one district court to another under [28 U.S.C.] § 1404(a), the transferee court is usually free to decide federal issues in the manner it views as correct without deferring to the interpretation of the transferor circuit." (citations, internal quotation marks, and alterations omitted)). Leave to amend is especially warranted in this case, as PBE's complaint is the "first complaint" filed in this Court. *See Barry Aviation Inc.*, 377 F.3d at 687.

Therefore, I FIND that leave to amend PBE's complaint should be given if the complaint is dismissed for lack of personal jurisdiction or failure to state a claim for which relief may be granted, as amendment would not be futile or untimely.

## IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that Chesapeake's motion to dismiss for lack of personal jurisdiction and failure to state a claim for relief (ECF 48) be GRANTED with respect to the duty-to-indemnify claim against Chesapeake alleged in Count VII of the complaint. I further RECOMMEND that PBE be given leave to amend its complaint.

22

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

Entered this 3rd day of April 2023.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge