UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| PETERS BROADCAST ENGINEERING, INC., | : | CASE NO. 1:21-CV-219-TLS-SLC |
| | : | |
| PLAINTIFF, | : | JUDGE HOLLY A. BRADY |
| v. | : | |
| | : | MAGISTRATE JUDGE |
| PEM CONSULTING GROUP, LLC, et al. | : | SUSAN L. COLLINS |
| | : | |
| DEFENDANTS. | | |

## AMENDED COMPLAINT FOR DAMAGES

### I. INTRODUCTION

Plaintiff, Peters Broadcast Engineering, Inc. (or "PBE"), asserts the following claims under this Court's diversity jurisdiction, 28 U.S.C. §1332, for breach of contract, actual fraud, fraud in the inducement, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation and tortious interference with business relations against Defendants, PEM Consulting Group, LLC, (hereinafter "PEM"), Pyramid Consultants & Construction, LLC (hereinafter "Pyramid") and Phillip E. Miller, (hereinafter "Miller"), PEM, Pyramid and Miller ("the Miller Defendants") and breach of contract and declaratory judgment claims against Defendants, Atlantic Casualty Insurance Company and Chesapeake Insurance.[1] This Amended Complaint stems from the Miller Defendants' fraudulent and calculated scheme to purloin money, contracts and opportunities from PBE in order to enrich themselves and to avoid prosecution for fraudulent activities in which they were engaged in Houston, Texas.[2]

---

[1] Unless otherwise specified, "Defendants" as used herein refers to all named Defendants.
[2] The Miller Defendants are currently in default in connection with a $732,893.95 fraud action in Harris County, Texas that has relevance to this action and is discussed in greater detail below.

1

PBE hereby asserts these claims against the Defendants jointly and severally. This Amended Complaint arises from the Miller Defendants' deceit, nondisclosure and fraud employed to position themselves to steal funds and construction work for Crown Castle USA Inc., a nationwide leader of cell site construction during the 5G rollout (referenced to hereinafter as "Crown Castle") from PBE. A copy of PBE's contract with Crown Castle is at Exhibit A.

## II.  JURISDICTION AND VENUE

1. Jurisdiction is founded upon the provisions of 28 U.S.C. § 1332. Plaintiff is a citizen of a different state than any Defendant. The amount in controversy, exclusive of interest, exceeds $75,000.00.

2. Venue is properly laid in the Northern District for the reason the events described arose in the Northern District of Indiana. The Defendants conducted activity in the Northern District, caused tortious injury here and entered into agreements in the Northern District of Indiana.

## III. PARTIES

3. Plaintiff, PBE, is a small, long-standing and reputable telecommunications engineering company based in Ft. Wayne, Indiana. Plaintiff's sole shareholder, founder and Chief Executive Officer is Robert M. Peters. PBE has experienced catastrophic financial injury that is directly traceable to the Miller Defendants' fraudulent campaign to steal money and cell tower construction contracts from PBE. PBE is a corporation organized and existing under the laws of Indiana. Its principal place of business is Fort Wayne, Indiana. The agreements underlying this action were executed in the Northern District of Indiana.

4. Defendant, PEM Consulting Group, LLC (hereinafter "PEM") is a New Jersey limited liability company. The members of PEM are Phillip E. Miller, a citizen of New Jersey,

Michael C. Barron, a citizen of Illinois, and Thomas Ross, a citizen of Michigan. The citizenship of PEM and its members is diverse from that of PBE.

5. Defendant Pyramid Consulting & Construction, LLC ("Pyramid") is a dba for PEM. Pyramid's citizenship is the same as PEM.

6. Defendant Phillip E. Miller (hereinafter Miller"), is the Chief Executive Officer and Managing Member of PEM and Pyramid.

7. Defendants Atlantic Casualty Insurance Company ("Atlantic") and Chesapeake are the general liability carriers for PEM. Miller and PEM represented to PBE that Atlantic and Chesapeake were PEM's insurance carriers for transactions in the State of Indiana with PBE and that PBE would be made a loss payee and additional insured on their general liability insurance policies. Atlantic is a for-profit domestic insurance company incorporated in North Carolina with a principal place of business in the State of North Carolina, Chesapeake is a for-profit domestic insurance company incorporated in Maryland, with a principal place of business in the State of Maryland.

## IV.  FACTS COMMON TO ALL COUNTS

8. Plaintiff restates all allegations above as though fully restated herein.

9. On May 21, 2019, PBE entered into a Construction Master Services Agreement with Crown Castle USA, Inc. to perform certain communications tower construction services for Crown Castle in the State of Indiana (hereinafter, "Crown Agreement"). A copy of the Crown Agreement is attached hereto at Exhibit A. Under the Crown Agreement, PBE was offered an initial opportunity to assist in the construction of thirty-three cell sites in Indiana as part of the

nationwide 5G rollout. Crown Castle increased the agreement to include fifty sites, prior to the agreement being terminated due to the fraud and tortious activities of the Miller Defendants described herein. The value of PBE's contracts for the thirty-three sites exceeded one million dollars. The contract value would have increased substantially had the Miller Defendants not caused PBE to lose it.

10. Crown Castle hires subcontractors such as PBE to perform certain aspects of the construction and deployment of communications equipment on cell towers being constructed. Under a Crown Agreement, PBE commenced work for Crown at various cell sites located in Indiana (hereinafter, the "Crown Project"). In May 2019 Crown issued purchase orders to PBE for each site where PBE's construction services were desired by Crown. As stated the initial allocation of work to PBE involved thirty-three sites, collectively valued over one million dollars.

11. In June, 2019, Miller approached PBE with an offer to work as a subcontractor or lower tier contractor under the Crown Agreement. Miller had learned of PBE's Crown Castle agreement from a former PBE employee, Chris Smith.

12. Unbeknownst to PBE in June of 2019 , the point at which PBE began discussions with Miller, in January 2019, the Miller Defendants had entered into an agreement in Houston, Texas with Knudson, LP and its owner Patricia Knudson Joiner, to perform cell site construction work in Texas.

13. Patricial Knudson Joiner, was the principal owner of Knudson, LP and former Director of Planning for the City of Huston, Texas (hereinafter referred to collectively as "Knudson").

14. In January 2019 Miller told Knudson that he had been awarded a cell site construction contract in 2018 by Mas-Tec Network Solutions, (hereinafter "Mas-Tec"), one of the largest cell tower deployment companies in the United States.

15. Based upon the alleged existence of a Miller/Mas-Tec agreement, Miller obtained an investment from Knudson into Miller's company, Pyramid, to purchase trailers, trucks, executive vehicles, 5G tools, insurance, and funds for labor costs including travel per diem, lodging for field work and salaries for field staff, for the limited purpose of cell site construction work for Mas-Tec. Knudson was to be repaid by Miller from proceeds received from Mas-Tec when work was completed. The funds invested into Pyramid by Knudson and equipment purchased belonged to Knudson. These assets were to be used solely for purposes authorized by Knudson.

16. Based upon the representations of Miller in February 2019, Knudson purchased three pick up trucks, three SUV's, three covered trailers and tools for Mas-Tec work.

17. In March 2019, Miller requested that Knudson purchase an additional four trucks, another trailer and two additional covered trailers for cell tower work expansion. Knudson purchased the additional vehicles and equipment. Miller had represented to Knudson that Pyramid was engaged in construction work as a Mas-Tec subcontractor.

18. Miller and Pyramid represented to Knudson that the equipment purchased and funds advanced were being used to finance cell site construction work for Mas-Tec only. Months went by and Miller did not receive any payment for Mas-Tec work which caused Knudson to question what happened to its investment.

19. It was later learned by Knudson in the summer of 2019 that Miller and Pyramid did not have an agreement with Mas-Tec. The funds advanced by Knudson were not used to pay for

crews working at Mas-Tec sites. The funds and equipment were converted by Miller and Pyramid for personal use and on information and belief, used at other locations for Miller's personal benefit.

20. By May 2019, despite having received over $700,000.00 from Knudson to purchase vehicles, equipment and hire construction crews, the Miller Defendants failed to repay any funds to Knudson, as promised because the Miller Defendants' claim that they had agreements with Mas-Tec to construct cell towers was false.

21. In order to mollify Knudson, who had discovered that Miller and Pyramid had perpetrated a fraud upon them which caused Knudson to invest over $732,893.95 in equipment and outright cash payments, Miller and Pyramid offered to make restitution to Knudson.

22. In order to obtain funds to repay Knudson and to continue their fraudulent activities, the Miller Defendants, having learned from a former PBE employee, Chris Smith, that PBE had a cell site construction contract with Crown Castle, the Miller Defendants contacted PBE in June of 2019 through Chris Smith.

23. PBE had no knowledge of Miller's Knudson fraud.

24. In June 2019 Miller told PBE that he could provide all required equipment and capital needed to complete construction of the thirty-three cell sites that Crown had issued purchase orders for to PBE. Miller stated PBE could retain 10% of the Crown payment with 90% going to Miller for labor and materials.

25. In June 2019 Miller represented to PBE that he and his companies, Pyramid and PEM, would supervise construction crews supplied by Chris Smith.

26. Miller stated he would pay the crews, provide all required equipment and management in return for payment by PBE of 90% of the payment received by PBE from Crown

Castle when site construction was completed. At the time of this proposal PBE crews were already in the field performing Crown work.

27. On July 12, 2019, Miller provided a proposed subcontractor agreement to PBE. A copy of the Miller proposal is at Exhibit B.

28. Because the proposed Miller subcontract, did not comply with the subcontract requirements of the PBE/Crown Castle agreement, PBE proposed an alternative subcontractor agreement, Exhibit C.

29. PBE and Miller engaged in several days of negotiation in an attempt to enter into an acceptable subcontractor agreement.

30. On July 12, 2019, based upon representations of Miller, that he had provided the equipment, supervision and labor for Crown cell site work, and his demand that PBE sign Exhibit B "immediately," PBE paid $46,365 to Miller as a gesture of good faith for the work be claimed credit. See, Exhibit D. for Miller demand.

31. The July 12, 2019 payment by PBE was issued in order to assure that work continued on the Crown sites. PBE did not relinquish control of the construction work as an acceptable subcontract had not been entered with Miller.

32. PBE maintained direct control over funds received from Crown. Aside from failing to sign an acceptable subcontractor agreement, Miller also delayed providing to PBE a certificate of insurance, W-9s and an employer identification number.

33. Section 7 of the PBE/Crown agreement authorized PBE to engage subcontractors, but specified required details that the agreements proposed by Miller did not contain.

34. On July 17, 2019, Miller met with PBE in Ft. Wayne, Indiana, in order to develop an appropriate subcontract.

35. At the Ft. Wayne meeting on July 17, 2019, Miller failed to disclose that the funds and equipment that he represented were his company's and available for deployment at Crown sites, actually belonged to Knudson. Miller failed to disclose that the Knudson assets were limited to use on Knudson projects.

36. On July 17, 2019, Miller falsely represented to PBE that Miller could personally fund all requirements under the PBE/Crown contract. Miller further represented that he and his entitles, Pyramid and PEM, had the wherewithal to purchase PBE. Miller informed PBE on July 17, 2019 that if PBE were acquired by Miller, Miller would continue to pay PBE 10% of all Crown construction payments. At no time did Miller disclose that he was under investigation, that he lied to Knudson concerning his status with Mas-Tec, or that he needed immediate cash in order to repay Knudson, which was why he demanded that PBE relinquish control over funds and that Miller become the Crown subcontractor.

37. Following the July 17, 2019 meeting in Ft. Wayne PBE again sent a proposed subcontractor agreement to Miller.

38. As of August 1, 2019, Miller had not signed the subcontractor agreement sent by PBE.

39. Due to Miller's failure, PBE maintained full control over payments to the crews working at the Crown sites, but continued to advance funds to Miller in order to continue work at the sites.

40. By reason of PBE's refusal to permit Miller to obtain funds directly from Crown in the absence of an approved subcontract, Miller did not pay construction crews as promised. The crews left the construction sites in late July 2019. The crews did not return to work with August 6, 2019.

8

41. On August 15, 2019, Miller through PEM finally provided a certificate of insurance to PBE, Exhibit G.

42. PBE advised Miller that the delay in entering into an acceptable subcontractor agreement was jeopardizing work at the sites and the Crown relationship.

43. Despite refusal to enter into an agreement or pay the crews as promised, Miller continued to demand payment from PBE.

44. In order to maintain progress under the Crown agreement PBE remitted additional funds to Miller.

45. On August 24, 2019, without privilege or authority to do so, Miller contacted Crown directly for payment. Miller misrepresented to Crown that he and his entities were subcontractors for PBE, despite the fact that PBE had maintained full control over all site construction as Miller had never entered into an acceptable subcontractor relationship with PBE. Miller nonetheless attempted to cause Crown to engage Miller directly and interfered with PBE's relationship with Crown.

46. Upon learning that PBE had allegedly engaged a subcontractor, Miller, outside of the process authorized in the Crown agreement, and due to crews not performing because they were not being paid by Miller as promised to PBE by Miller, Crown terminated its PBE agreement.

47. At the time of termination work had begun on six sites, without only two being completed, which PBE, not Miller financed.

48. The termination of the Crown/PBE agreement was caused by Miller's failure to pay construction crews as agreed on July 17, 2019, in Ft. Wayne, Indiana during meetings with PBE and during conversations leading up to the July 17, 2019 Ft. Wayne meeting.

49. On July 13, 2019, the Miller Defendants sent demand to PBE to pay Miller for alleged work on Crown Castle sites, that Miller alleged had been performed notwithstanding the execution of a signed agreement.

50. The Miller Defendants engaged in a series of high pressure communications with PBE and its office staff to cause PBE to immediately remit payment allegedly due.

51. Unbeknownst to PBE, the Miller Defendants urgently needed funds, not to pay Indiana crews, but to make restitution to Knudson, whose equipment and vehicles, had been converted for use on Crown Castle sites for PBE.

52. In order to demonstrate a good faith desire to work out an agreement with Miller, on July 13, 2019, PBE paid Miller $46,365.00 work Miller had allegedly completed on Crown Castle sites.

53. PBE continued to urge the Miller Defendants to enter into a subcontractor agreement that complied with the Crown Castle Master Services Agreement.

54. Because the Miller Defendants failed to enter into a subcontractor agreement that met Crown Castle's requirement on August 1, 2019 PBE asserted full control over the Crown Castle projects.

55. In the interim between July 12, 2019 and August 1, 2029 because the funds released by PBE on July 12, 2019 to the Miller Defendants to pay Indiana crews, were not used for the purpose, but were used to repay Knudson, the Indiana crews left Crown Castle job sites. In addition the Miller Defendants accused PBE of dishonesty and without authority, despite full awareness of PBE's agreement with Crown Castle, on August 24, 2019, the Miller Defendants attempted to circumvent PBE, and directly to Crown Castle for payment, which caused PBE to lose its 50 site

agreement with Crown Castle. The Miller Defendants attempted to establish a direct relationship with Crown Castle. They had represented to Knudson a direct relationship with Crown existed.

56. The certificate of insurance provided by PEM represented that Atlantic was its general commercial carrier and Chesapeake its carrier for workers compensation.

57. Unaware that the Miller Defendants had gone directly to Crown Castle and attempted to circumvent PBE, PBE continued to try to reach an acceptable subcontractor agreement with Miller on July 26, 2019, August 8, 2019, August 26, 2019 ad September 3, 2019, all of which the Miller Defendants refused to sign. PBE also sent additional payments to the Miller Defendants on August 5, 2019.

58. At no time did the Miller Defendants perform as promised.

59. The Miller Defendants collected funds from PBE but failed to pay crews, lied to PBE concerning ownership of vehicles and equipment, jeopardized and caused the loss of PBE's lucrative Crown Castle agreement.

60. PBE learned of Miller's other fraudulent activities in September 2019 when it was contacted by LT. Maguire from the Harris County Texas Sheriff's Office.

61. The details of the history between the Miller Defendants and Knudson, et al is set forth fully in the investigation conducted by the Harris County Texas Sheriff's Office. A copy of the investigation report is attached hereto as Exhibit E and fully incorporated herein.

62. By reason of the fraudulent conduct of the Miller Defendants, Knudson and Ms. Joiner have instituted a civil fraud action against the Miller Defendants, and others, in the 164th Judicial District Court of Harris County Texas, Case No. 2021-13042, *Knudson, LP, et al. v. Pyramid Consultants & Constructions, LLC, et al.*. A copy of Plaintiffs First Amended Petition for relief is attached hereto as Exhibit F and fully incorporated herein by reference.

63. PBE has been injured and caused enormous financial loss by reason of the conduct and breaches committed against it by the Miller Defendants. Accordingly, PBE asserts the following claims:

## COUNT I: BREACH OF CONTRACT

64. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

65. PEM, Pyramid and Miller have breached the parties' agreement by failing to provide construction services as orally agreed upon in June 2019.

66. On information and belief, PBE is the loss payee and additional insured on general liability insurance policies issued by Atlantic and Chesapeake to PEM and Miller for transactions with PBE.

67. PEM, Pyramid and Miller through their breach of contract have caused PBE to not only absorb substantial losses but have also caused the loss of current and future Crown Castle business valued at over one million dollars.

68. PBE has been damaged by the Miller Defendants breach of contract described above and all Defendants are therefore liable to Plaintiff in compensatory damages, interest, cost, and attorneys fees.

## COUNT II: DECLARATORY JUDGMENT

69. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

70. PBE seeks a declaration that Atlantic is obligated to provide insurance coverage, subject to its respective policy limits, for the liabilities and the amount of damages owed by PEM, Pyramid and Miller to PBE pursuant to all Counts of this Amended Complaint.

71. PBE seeks a declaration that Chesapeake is obligated to provide insurance coverage, subject to its respective policy limits, for the liabilities and the amount of damages owed by PEM, Pyramid and Miller to PBE pursuant to this Amended Complaint.

72. Chesapeake by issuing or authorizing the issue of the certificate of insurance at Exhibit D purposefully availed itself of the privilege of conducting activity in Indiana.

73. The insurance agreement between PEM and Chesapeake, a copy of which has been requested in overdue discovery from PEM but not received, created a substantial connection between Chesapeake and Indiana.

74. By making PBE an additional insured and loss payee Chesapeake created continuing obligations between itself and PBE in Indiana.

75. The provision of insurance coverage to PEM by Chesapeake contemplated future consequences in connection with the Crown Castle/PBE workers compensation requirements and required continuing contact with Indiana cell site construction projects.

## COUNT III: FRAUD

76. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

77. On July 17, 2019 and in email and telephone calls from July 12, 2019 to July 17, 2019, Miller, Pyramid and PEM made material misrepresentations to PBE concerning the source of funds and equipment to complete thirty-three Crown Castle cell sites in Indiana.

78. The Miller Defendants knew when these misrepresentations were made they were false.

79. PBE relied to its detriment upon the representations of the Miller Defendants, which reliance led to the loss of money paid to the Miller Defendants on July 12, 2019 and subsequently as well as loss of the PBE/Crown Castle contract.

80. PBE has been damaged by the fraud of the Miller Defendants.

81. The Miller Defendants are liable to PBE in compensatory and punitive damages, attorney fees, interest, costs and such other relief as the Court deems fit.

82. The tortfeasors are Miller, Pyramid and PEM. The fraud, misrepresentations of financial status and source of funds and equipment and skimming of funds meant for crews, was committed in Ft. Wayne, Indiana on July 17, 2019, in person, by Phil Miller.

## COUNT IV: FRAUD IN THE INDUCEMENT

83. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

84. On July 17, 2019, the Milelr Defendants fraudulently induced PBE to agree to remit funds for work at Crown cell sites.

85. No work was done or payment made to crews by the Miller Defendants.

86. PBE is entitled to damages from the Miller Defendants for amounts paid to them for payment to crews that Miller did not actually pay, but induced PBE to release by claiming the funds were to pay crews. The Miller Defendants are liable for compensatory damages, interest, attorney fees and costs.

## COUNT V: UNJUST ENRICHMENT

87. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

88. On July 12, 2019 PBE paid $46,365.00 to the Miller Defendants at their express request.

89. PBE also paid $10,000 to the Miller Defendants at their request on August 8, 2019.

90. PBE expected the Miller Defendants to honor the agreement to use the funds to pay for labor and equipment at Crown construction sites.  Instead the funds were used by Miller personally.

91. The Miller Defendants did not provide the management, equipment and labor promised.

92. PBE is entitled to the return of all amounts remitted to the Miller Defendants.

## COUNT VI: FRAUDULENT MISREPRESENTATION

93. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

94. PBE's claim for fraudulent misrepresentation, just as its claim for fraud in the inducement, has the same elements as Count 3, PBE's claim entitled Fraudulent Misrepresentation, and is incorporated herein as restated.

95. PBE has been damaged by Miller fraudulent misrepresentations.

96. PBE is entitled to compensatory damages, punitive damages, interest, attorney fees and costs.

## COUNT VII:  NEGLIGENT MISREPRESENTATION

97. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

98. The Miller Defendants, in the course of their business with PBE on July 17, 2019 supplied false information to PBE in its business transactions with Miller.

99. Miller failed to exercise reasonable care or competence in obtaining or communicating the information.

100. PBE justifiably relied upon the information supplied by the Miller Defendants and altered its position detrimentally.

101. PBE suffered pecuniary loss as a result.

102. The Miller Defendants are liable to compensatory damages, interest, attorney fees and costs.

## COUNT VIII: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

103. Plaintiff hereby incorporates all the foregoing allegations as if fully rewritten herein.

104. PBE had a valid business relationship with Crown Castle.

105. The Miller Defendants had knowledge of the existence of the relationship.

106. The Miller Defendants intentionally interfered with that relationship by meeting directly with Crown and lying concerning PBE's activity.

107. Miller had no right to circumvent Peters.

108. PBE experienced the loss of its Crown contract damage resulting from the defendants wrongful interference with the relationship.

109. The Miller Defendants attempted to replace PBE as a Crown contractor by misrepresentation on April 24, 2019 to Crown is actionable.

110. The Miller Defendants are liable for compensatory damages, punitive damages, interest, costs, and attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks the Court to:

1. Enter judgment in favor of PBE and against all Defendants, jointly and severally, in compensatory damages in an amount not less than $1,250,000.00 exclusive of interest and costs, plus attorney fees, pre-judgment and post judgment interest and costs of this litigation.

2. Enter judgment in favor of PBE and against all Defendants, jointly and severally, in punitive damages in an amount not less than three times compensatory damages, or $7,750,000 plus interests, costs and attorney's fees.

3. Order that the corporate entity of PEM and Pyramid be disregarded and their members and shareholders made personally liable.

4. Issue a declaration that:

    a. Atlantic is required to and obligated to provide insurance coverage for PEM, Pyramid and Miller for any and all of their liability pursuant to the Amended Complaint;

    b. Chesapeake is required to and obligated to provide insurance coverage for PEM, Pyramid and Miller for any and all of their liability pursuant to the Amended Complaint.

5. Award PBE all further appropriate relief including interest, costs and attorney fees.

*s/Percy Squire, Esq.* _____<br>
Percy Squire (0022010)<br>
Percy Squire Co., LLC<br>
341 S. Third Street, Suite 10<br>
Columbus, Ohio 43215

              (614) 224-6528, Telephone
              (614) 224-6529, Facsimile
              Psquire@sp-lawfirm.com

## JURY DEMAND

Plaintiff hereby demands that all issues triable as of right to a jury be presented to a jury.

            *s/Percy Squire, Esq*_____
            Percy Squire (0022010)

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed forwarded by the Court's electronic mail and on May 19, 2023, to the following parties:

John C. Trimble
Lewis Wagner, LLP
1141 Roosevelt Avenue, Suite 102
Indianapolis, IN 46201
jtrimble@lewiswagner.com

John C. Scott
PVH Faulkner & Tepe, LLP
720 Pete Rose Way, Suite 400
Cincinnati, Ohio 45202
jscott@faulkner-tepe.com

Edward Simon
Edward F. Simon, LLC
104 Cathedral St.
Annapolis, MD 21401
Tel: 410-562-6669
Fax: 410-571-3997
E-mail: cdsimon.law@gmail.com

Michael H. Michmerhuizen, #22086-02
215 E. Berry Street
Fort Wayne, IN 46801
Phone: (260) 423-9551
Fax: (260) 423-8920
E-mail: mhm@barrettlaw.com

Jeffrey C. Mando
Adams Law PLLC
40 W. Pike St.
Covington, KY 41011
Tel: 859-394-6200
Fax: 410-571-3997
E-mail: jmando@adamsattorneys.com

                                          s/Percy Squire
                                          Percy Squire, Esq. (0022010)

## EXHIBITS

| | |
|---|---|
| **Exhibit A.** | Master Services Agreement with Crown Castle |
| **Exhibit B.** | Miller Proposed Agreement |
| **Exhibit C.** | PBE Proposed Agreement |
| **Exhibit D.** | Miller threat to contact Crown Castle and Demands for Immediate Payments |
| **Exhibit E.** | Affidavit of Brandon Draper Related to Investigative Report of LT John McGuire |
| **Exhibit F.** | Petition of *Knudson LP v. Pyramid Consultants* |
| **Exhibit G.** | Certificate of Insurance |